**GUTHY–RENKER FITNESS, L.L.C., Plaintiff,**

v.

**ICON HEALTH & FITNESS, INC., et al., Defendants.**

No. CV–97–7681 LGB(Ex).

United States District Court, C.D. California.

March 16, 1998.

Order Denying Reconsideration April 15, 1998.

Frederick A. Clark, McKenna & Cuneo, L.L.P., Los Angeles, CA, James R. Uhlir, F. Ross Boundy, David A. Lowe, Christensen, O'Connor, Johnson & Kindness, Seattle, WA, for Defendant.

Robert G. Badal, Ben D. Whitwell, Belin, Rawlings & Badal, L.L.P., Los Angeles, CA, Donald M. Cislo, Daniel M. Cislo, David L. Hoffman, Robert J. Lauson, Cislo & Thomas, L.L.P., Santa Monica, CA, for Plaintiff.

ORDER DENYING DEFENDANTS'
MOTION TO TRANSFER,
DISMISS OR STAY

BAIRD, District Judge.

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 78 and Central District of California Local Civil Rule 7.11, the Court dispensed with oral argument on Defendants' Motion to Transfer, Dismiss or Stay, and took it under submission. Having reviewed all pertinent papers on file and for the reasons set forth below, the Court hereby DENIES Defendants' Motion.

## II. BACKGROUND

Plaintiff Guthy–Renker Fitness, LLC ("Plaintiff") is purportedly manufacturing an elliptical exercise machine (the "POWER TRAIN") which simulates the exercises of walking, jogging, stair climbing and running. (Compl. ¶ 7.) Plaintiff allegedly has already received thousands of advance orders from retail outlets for the POWER TRAIN and soon plans to offer the exercise apparatus for sale through the use of television infomercials. (*Id.* ¶ 8.)

Defendant Precor Incorporated ("Precor") also manufactures and sells an elliptical training device (the "EFX"). (Mot. at 1.) Precor is the apparent holder of U.S. Patent Nos. 5,242,343; 5,383,829 (the " '829 Patent"); 5,518,473; 5,562,574; and 5,577,985 (collectively referred to as "Patents"). According to Precor, the EFX specifically incorporates certain technology covered by the '829 Patent, which was originally issued to a Mr. Larry Miller ("Miller"). (Potts Decl. at 2, ¶ 3.) Precor obtained the rights to Miller's '829 Patent through an exclusive license agreement. (*Id.*) Precor subsequently granted Defendant ICON Health and Fitness, Inc. ("ICON" and collectively referred to as "Defendants") a license to manufacture and sell the EFX. (Lowe Decl. at Ex. 1.)

On October 2, 1997, Precor's legal counsel sent a letter to Plaintiff notifying it of the Patents and encouraging further dialog between the parties to avoid the sale of potentially infringing devices. (Van De Bunt Decl. at 1, ¶ 4; Lowe Decl. at Ex. 1.) On October 20, 1997, Plaintiff initiated the instant case by filing a Complaint against Defendants seeking a declaratory judgment that the POWER TRAIN does not infringe Defendants Patents, or in the alternative an order declaring the Patents invalid. (Compl. at 6.) The Complaint also asserts a cause of action against Defendants for Tortious Interference with Prospective Economic Advantage. (Compl. at 4–5.) Plaintiff filed a First Amended Complaint on November 21, 1997.

On January 15, 1998, Plaintiff perfected substitute service on Precor.[1] On January 16, 1998, Precor filed a Complaint for infringement of the '829 Patent against Plaintiff and Luxqueen Sporting Goods Manufacturing, Co.[2] ("Luxqueen") in the Western District of Washington (the "Washington Action"). (Lowe Decl. ¶ 5.) Defendants subsequently served Plaintiff on January 19, 1998. (*Id.*)

On February 4, 1998, Plaintiff and Precor agreed to a stipulation granting Precor additional time to answer the First Amended Complaint. On February 13, 1998, Precor filed a Motion to Transfer or, Alternatively to Dismiss or Stay the Proceedings. Precor then answered the First Amended Complaint on February 20, 1998. Plaintiff opposed the Motion on February 23, 1998. Precor subsequently replied on March 2, 1998.

A hearing on Precor's Motion to Transfer or, Alternatively to Dismiss or Stay the Proceedings was originally set for March 9, 1998. That hearing was subsequently taken off calendar by Minute Order dated March 5, 1998.

## III. LEGAL STANDARDS

■ "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

---

1. As of February 28, 1998, there is no recorded proof of service on ICON.

2. Luxqueen Sporting Goods, LLC allegedly manufactures certain products in Taiwan and ships them to Plaintiff for sale in the United States.

In making this broad discretionary determination, there are three factors which a court must consider in light of the particular facts before it: (1) convenience of the parties; (2) convenience of the witnesses; and (3) the interest of justice. *Arley v. United Pac. Ins. Co.*, 379 F.2d 183, 185 (9th Cir.1967); *E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F.Supp. 465, 466 (E.D.Cal.1994).

■ In weighing the discretionary factors under § 1404(a), relevant considerations include convenience of the witnesses, judicial economy, relative ease and access to proof, relative docket congestion, and the availability of compulsory process. *E. & J. Gallo Winery*, 899 F.Supp. at 466; *see also* William W. Schwarzer, *Federal Civil Procedure Before Trial*, ¶ 4:269 at 4–54 (1997).

■ When two actions involving similar parties and issues are commenced in separate forums, a court may exercise its discretion under § 1404(a) to transfer one of the actions. *Id.* ¶ 4:281 at 4–56. In so doing, preference is given to the first-filed plaintiff's choice of forum under the "first-to-file" rule. *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 625 (9th Cir.1991). However, a party to the later-filed action may request the court to disregard the first-to-file rule based on certain equitable factors such as forum shopping, bad faith and convenience of the parties and witnesses. *Id.* at 628.

## IV. ANALYSIS

In its Motion to Transfer or, Alternatively to Dismiss or Stay the Proceedings, Precor contends that the first-to-file rule should be disregarded because Plaintiff filed its Complaint with this Court solely for the purpose of preserving venue and avoiding the need to potentially litigate a patent infringement action in Washington. (Mot. at 3.) Precor additionally claims the first-to-file rule should be set aside in this action because Washington is a more convenient forum to adjudicate the dispute. (*Id.* at 8.)

In opposition, Plaintiff asserts that Precor's Motion to Transfer should be denied because the first-to-file rule establishes that this action takes precedence over the later filed Washington action. (Opp'n at 6.) Plaintiff also contends that while the first-to-file rule recognizes an exception where a plaintiff files in anticipation of litigation, this exception is inapplicable to the present case. (*Id.* at 10.) Moreover, Plaintiff asserts that the balance of convenience does not favor transfer to the Western District of Washington. (*Id.* at 14.)

### A. The First–to–File Rule

#### 1. Applicable Legal Standards

■ There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district. *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 185–86, 72 S.Ct. 219, 222, 96 L.Ed. 200 (1952). The district court may transfer, stay, or dismiss an action under these circumstances. *Alltrade, Inc.*, 946 F.2d 622, 623 (9th Cir.1991). The underlying purpose of the first-to-file rule is to promote efficiency and should not be disregarded lightly. *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 750 (9th Cir.1979); *Alltrade, Inc.*, 946 F.2d at 625.

■ However, the first-to-file rule is not to be mechanically applied, but "rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir.1982). The goal is the avoidance of both an unnecessary burden on the federal judiciary and of conflicting judgments. *Church of Scientology*, 611 F.2d at 750. Such considerations have favored application of the rule in a patent dispute where the risk of conflicting determinations as to the patent's validity and enforceability were clear. *Pacesetter Sys., Inc.*, 678 F.2d at 96. However, unless compelling circumstances justify departure from the rule, the first-filing party should be permitted to proceed without concern about a conflicting order being issued in the later-filed action. *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D.Cal.1994).

### 2. Applicability of the First–to–File Rule

■■■ Three threshold factors should be considered in deciding whether to apply the first-to-file rule: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Alltrade, Inc.*, 946 F.2d at 625–26; *Ward*, 158 F.R.D. at 648. In making this determination, the court should employ the date on which the original, rather than the amended, complaint was filed. *Ward*, 158 F.R.D. at 648. However, even if the first-to-file rule is found to be applicable in a given case, the court may still decide to dispense with the rule for equitable reasons; for example, where the first action was filed merely as a means of forum shopping.

Turning to the first factor, the chronology of the two actions supports application of the first-to-file rule. Plaintiff filed its original Complaint with this Court on October 20, 1997. Precor subsequently filed the Washington Action on January 16, 1998. Thus, Plaintiff's Complaint was filed before the Washington Action and therefore satisfies the first factor of the first-to-rule.

Next the Court considers the similarity of the parties in both the Plaintiff's Complaint and the Washington Action. In the Complaint, Plaintiff asserts its causes of action against Precor and Icon. In the Washington Action, Precor has named Plaintiff and Luxqueen. (Lowe Decl. at Ex. 4.) Thus, the primary parties in the two actions are Plaintiff and Precor. The additionally named defendants in the two actions are merely derivative manufacturers of the primary parties. Therefore, the Court finds there is a sufficient similarity between the parties in the two actions to satisfy this factor of the first-to-file rule.

The final factor the Court considers is the similarity of the issues presented in the two actions. Plaintiff's Complaint seeks a declaratory judgment of patent non-infringement related to five patents, including the '829 Patent, as well as damages for tortious interference with prospective economic advantage. (Compl. at 1.) Precor's Washington Action is for patent infringement of only the '829 Patent. (Lowe Decl. ¶¶ 5, 6.)

Although there are multiple patents involved in Plaintiff's Complaint, both actions involve a construction and application of the '829 Patent. The '829 Patent is apparently the primary patent involved in the two disputes since it allegedly covers the elliptical training technology employed in the EFX. (*Id.* ¶¶ 1, 7.) Moreover, the alleged infringing device, the POWER TRAIN, is the subject of comparison in both actions. Accordingly, the Court determines that there is a sufficient similarity between the two actions to satisfy this factor of the first-to-file rule.

In sum, the Court finds that the three factors espoused by the Ninth Circuit in *Alltrade, Inc.* are satisfied. First, the chronology of the events reveals that Plaintiff filed its Complaint before Precor's Washington Action. Second, the present and Washington Actions involve substantially similar parties. Third, both actions are sufficiently similar because each action involves the same primary patent and allegedly infringing device. Therefore, the Court concludes that the first-to-file rule applies to the Plaintiff's Complaint. The Court next considers whether equity warrants disregarding the rule under the circumstances presented. *See Ward*, 158 F.R.D. at 648.

### B. *Equitable Exceptions to the First–to–File Rule*

■■■ There are a variety of equitable circumstances under which courts have declined to apply the first-to-file rule. For instance, when the later-filed action has progressed further, efficiency considerations disfavor application of the rule. *Church of Scientology*, 611 F.2d at 750. Other circumstances under which an exception to the first-to-file rule will be made include bad faith and anticipatory suit filed for the purpose of forum shopping. *Alltrade, Inc.*, 946 F.2d at 628. A court may also relax the first-to-file rule if "the balance of convenience weighs in favor of the later-filed action." *Ward*, 158 F.R.D. at 648.

In the present action, Precor contends departure from the first-to-file rule is warranted based on the anticipatory filing of Plaintiff's Complaint. (Mot. at 4.) Precor additionally asserts that convenience and ac-

cess to proof, calendar congestion, and the interests of justice favor transfer. (Mot. at 8, 10, 12.) In opposition, Plaintiff contends its Complaint was not filed in anticipation of litigation and that convenience does not favor transfer to the Western District of Washington. (Opp'n at 10, 14.) Moreover, Plaintiff argues that the action cannot be transferred to Washington since the forum lacks personal jurisdiction over Plaintiff. Since the Court finds transfer inappropriate on the circumstances presented, it need not decide Plaintiff's personal jurisdiction argument.

### 1. The Anticipatory Nature of Plaintiff's Complaint

■ A suit is "anticipatory" for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent. *Ward*, 158 F.R.D. at 648. Such anticipatory suits are disfavored because they are examples of forum shopping. *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n. 3 (5th Cir.1983). As such, by recognizing this exception to the first-to-file rule, courts seek to eliminate the race to the courthouse door in an attempt to preempt a later suit in another forum. *Northwest Airlines v. American Airlines*, 989 F.2d 1002, 1007 (8th Cir.1993).

Here, Precor contends that Plaintiff's Complaint was an obvious attempt to preserve this forum's jurisdiction by filing suit first after receiving Precor's letter intimating potential patent infringements. (Reply at 2.) Precor additionally asserts that the declaratory nature of Plaintiff's action is further indicia an anticipatory suit considering Plaintiff failed to serve its action until 87 days later. (*Id.*)

#### a. Precor's "Intent to Sue" Letter

■ Filing a declaratory action after receipt of an intent to sue letter favors a finding that the first-filed suit was done for anticipatory, forum shopping purposes. *See Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir.1967). In *Amerada*, plaintiff received a letter requesting its voluntary appearance as a defendant in an ac-

tion already filed in the District of Columbia. *Id.* Defendant's letter further warned that if plaintiff did not so appear "suit would be brought against it in a jurisdiction where it was subject to service." *Id.* at 662. On, appeal, the circuit court affirmed the district court's determination that plaintiff's action was commenced "as the immediate result of the letter inviting it to appear in the District of Columbia." *Id.* at 663. Likewise, *Ward* recognized the need for "specific, concrete indications that a suit by defendant was *imminent* [ ]" for a suit to be declared anticipatory. *Ward*, 158 F.R.D. at 648 (emphasis added).

■ Here, Precor asserts that Plaintiff's declaratory action was brought pursuant to Precor's October 2, 1997 "notice-of-suit" letter. (Reply at 4.) However, such a conclusion appears contrary to both the letter's content and the Declaration of Precor's President, William W. Potts. First, Precor's letter expressly states that it was giving notice of the potential patent infringements in an attempt to avoid litigation. (Lowe Decl. at Ex. 2.) The letter further provides a detailed description of the substantial experience Precor has in litigating its patents. (*Id.*) However, these statements at best amount to veiled threats of legal action against Plaintiff. Moreover, Precor's own President states that it "did not threaten suit in its October 2, 1997 letter." (Potts Decl. ¶ 6.) Potts further states that Precor "had no intention [on or about October 2, 1997] of bringing additional suits against other competitors ...." (*Id.*) Rather, Precor was merely "encouraging further dialog to avoid the sale of infringing products necessitating legal action." (*Id.*) Thus, Precor's letter neither provided nor intended to provide Plaintiff with a specific, concrete indication of imminent suit within the meaning of *Amerada* and *Ward*. Consequently, there are insufficient facts to disregard the first-to-file rule on the basis that Plaintiff filed its Complaint as an anticipatory measure in response to the October 2, 1997 letter.

#### b. Failure to Serve for 87 Days

■ Precor also contends that Plaintiff's failure to serve the action for 87 days is

evidence of its forum shopping tactics. (Reply at 2.) Precor argues that this 87 day service delay contradicts the purpose of Plaintiff's declaratory action and therefore substantiates its claim that Plaintiff's action was filed merely as a preemptive strike to preserve the present forum. (*Id.*) Moreover, Precor further notes that during this 87 day service delay, Plaintiff never responded to Precor's October 2, 1997 invitation for dialogue. (Lowe Decl. ¶ 5.)

A first-filed declaratory action may be more indicative of a preemptive strike to preserve litigation in a particular forum than a suit for damages or equitable relief. *Northwest Airlines, Inc.*, 989 F.2d at 1007. However, a declaratory action is an appropriate vehicle to "alleviate the necessity of waiting indefinitely for a patent owner to file an infringement action." *KPR, Inc. v. C & F Packaging Co., Inc.*, 30 U.S.P.Q.2d 1320, 1324, 1993 WL 726236 (N.D.Tex.1993). Moreover, while the purpose of a declaratory action is furthered by the prompt service of an action on the defendant, Federal Rule of Civil Procedure 4(m) merely requires plaintiff to do so within 120 days of filing the action. *Ward*, 158 F.R.D. at 649.

Here, Plaintiff filed its Complaint on October 20, 1997. Plaintiff then filed its First Amended Complaint on November 21, 1997. Precor was served with the operative version of the action on January 15, 1998. As such, Plaintiff clearly complied with the 120–day service requirement · of Rule 4(m). The Court is somewhat puzzled by Plaintiff's failure to initiate a dialogue with Precor over the purported patents infringed prior to filing suit. However, while Plaintiff's "conduct in bringing suit was less than courteous, it does not amount to . . . a departure from the 'first to file' rule." *See Ward*, 158 F.R.D. at 649. Moreover, simply delaying service for 87 days does not mean that Plaintiff is not alleviating the necessity of waiting indefinitely for Precor to file an infringement action. To the contrary, Plaintiff filed its declaratory action after receiving Precor's letter requesting an open dialogue on the possible infringement of its actions, thereby quickly bringing the disputed patents before this Court. As such, Plaintiff has indicated that it wishes to expediently adjudicate the issues presented in Precor's letter rather than engage in protracted discussions which may not result in a resolution. Consequently, the Court finds that Plaintiff's delay in serving the First Amended Complaint comported with both of the requirements of Rule 4(m) and the intended policy behind recognizing declaratory actions. Therefore, the Court finds insufficient evidence to support a departure from the first-to-file rule.

### 2. Convenience Factors

A court may also relax the first-to-file rule "if the balance of convenience weighs in favor of the later-filed action." *Ward*, 158 F.R.D. at 648. Precor contends that the rule should be disregarded here because Washington is a more convenient forum. (Mot. at 8.) Precor's convenience argument is based on the following factors: (1) the location of witnesses and evidence; (2) the degree of calendar congestion in Central District of California; and (3) lack of any substantial connection with the present forum. (Mot. at 8–11.) The Court will address each of these factors in turn.

#### a. The Location of Witnesses and Evidence

Precor contends Washington is a more convenient forum for this action because a majority of the witnesses and evidence are located there. (Mot. 8–9.) Moreover, transfer is supposedly warranted in this case because Miller, the original creator of the '829 Patent, resides in Utah and therefore he would be required to travel to two separate forums to deliver identical testimony. (*Id.* at 9.) Precor has additionally brought to the Court's attention that there are six cases pending in the Western District of Washington involving the '829 Patent (Lowe Reply Decl. ¶ 2.)

Convenience of the parties and witnesses is a factor in determining whether to transfer an action to another forum. 28 U.S.C. § 1404(a); *A.J Indus., Inc. v. United States Dist. Ct.*, 503 F.2d 384, 386–87 (9th Cir.1974). The convenience of nonparty witnesses is also an important factor to consider in determining whether to transfer a case to another forum. *Gundle Lining Const. Corp.*

*v. Fireman's Fund Ins. Co.*, 844 F.Supp. 1163, 1166 (S.D.Tex.1994). Additionally, relative ease of access to proof may be considered in deciding whether to transfer an action. *Van Dusen v. Barrack*, 376 U.S. 612, 643, 84 S.Ct. 805, 822–23, 11 L.Ed.2d 945 (1964). However, the district court is vested with a substantial degree of discretion in determining whether to transfer for these reasons. *Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1302 (9th Cir.1997).

■ Here, Precor claims that "a minimum of 12–15 non-expert witnesses are expected to testify on [its] behalf." (Lowe Decl. ¶ 7.) Precor additionally claims it will also rely upon the testimony of nonparty Michigan resident Miller. (*Id.*) Precor argues that transfer is appropriate since "[m]any of these witnesses are expected to be Washington residents and none are from California." (Mot. at 8.) Additionally, Precor contends it will introduce documentary evidence located in Washington during the action. (*Id.*) Precor also notes that there are a total of six actions pending in the Western District of Washington involving the '829 Patent, thereby adding to the convenience of these witnesses and access to certain documentary proof. (Lowe Reply Decl. ¶ 2.)

In contrast, Plaintiff claims that all of its witnesses are "located in or within 100 miles of the Central District of California." (Van de Bunt Decl. ¶ 12.) Moreover, all of Plaintiff's books and records are located in the Central District of California, most of the allegedly infringing devices were sold in California, and all of the allegedly infringing devices are imported through Southern California ports. (*Id.*)

Based on the foregoing, it appears that while Precor has some compelling reasons for transferring this action to Washington, Plaintiff has equally compelling reasons for keeping the action in the Central District of California. Moreover, the Court recognizes that while the six pending Washington actions involve the '829 Patent, this case necessitates the interpretation of four additional patents apparently not at issue in the Washington actions. Furthermore, even if the present action solely involved the '829 Patent, transfer would not necessarily result in

substantial judicial efficiency because there are multiple alleged infringing devices, each of which possibly involve separate application to the construed patent. It also does not appear from Precor's moving papers that the '829 Patent has been interpreted yet by any Washington court since five of the six actions were only recently filed or transferred there. With respect to the sixth action, Precor has presented no evidence that anything has been decided on the merits. Rather, Precor merely provides the Court with the action's case number indicating it was filed sometime in 1997. Finally, although Miller's possible testimony in two separate forums is inconvenient, the degree of this inconvenience does not rise to the level of warranting a transfer of this action. Therefore, the Court concludes the location of witnesses and evidence is insufficient to justify departure from Plaintiff's choice of forum.

### b. Calendar Congestion

■ Precor next contends that Washington is a more convenient forum because the Western District of Washington's calendar is less congested. (Mot. at 10.) Accordingly, Precor asserts that transfer to Washington would result in the case going to trial quicker. (*Id.*) In support of its argument, Precor has introduced 1996 Federal Court Management Statistics which illustrate that the median time from filing of the complaint to trial in the Western District of Washington in 1996 was 15 months, while the same process in the Central District of California required 17 months. (Lowe Decl. ¶ 8.) Moreover, Precor also notes that the statistics also reflect 333 cases pending per judge in the Central District versus 326 cases pending per judge in the Western District of Washington. (Mot. at 11; Lowe Decl. ¶ 8.)

In support of its position, Precor cites *Fairchild Semiconductor Corp. v. Nintendo Co., Ltd.*, 810 F.Supp. 173. There, the court recognized that calendar congestion weighs in favor of transfer. *Id.* at 175. However, the court held that a difference of two months in median time to trial was insignificant and thus did not warrant transfer. *Id.* The Court finds the decision in *Fairchild* equally applicable to the present case. The

statistical data relied upon by Precor reveals that there are no substantial differences between the respective trial calendars. Accordingly, the Court declines Precor's invitation to transfer the action on this ground.

### C. Lack of Substantial Connection with the Present Forum

■■■ Precor next contends that its connection to the present forum is insignificant and therefore the action should be transferred to Washington. (Mot. at 11.) In support of its position, Precor claims that the patent was invented and reduced to practice outside of California. (*Id.*) Plaintiff contends that Precor sells the EFX in at least two Southern California retail stores. (Cadwell Decl. ¶¶ 2–3.) One of these retailers operates multiple locations, both of which offer the EFX for sale. (*Id.*)

Based on the evidence presented, sufficient connections with the present forum exist to justify declining to transfer this action. Precor apparently avails itself of certain economic benefits in the greater Southern California area.[3] Accordingly, the Court finds Precor to have sufficient connections to accept Plaintiff's decision to adjudicate in this forum.

In sum, the Court determines that it should adhere to the first-to-file rule in this case. Plaintiff's action meets the requisite elements of the first-to-file rule and Plaintiff did not engaged in a forum shopping or anticipatory litigation by filing this declaratory action, thereby justifying a departure from the rule. Moreover, the Court concludes that there is insufficient evidence to support setting aside Plaintiff's choice of forum based on the convenience factors discussed above.

### V. CONCLUSION

Based on the foregoing, the Court DENIES Precor's Motion to Transfer or, Alternatively to Dismiss or Stay the Proceedings.

**IT IS SO ORDERED.**

**3.** Precor does not claim that it is not subject to personal jurisdiction in California, just that the

---

ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION RE: TRANSFER, OR IN THE ALTERNATIVE TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 78 and Central District of California Local Civil Rule 7.11, the Court dispensed with oral argument on Defendant Precor Incorporated's Motion for Reconsideration Regarding Transfer, or in the Alternative, to Dismiss for Lack of Subject Matter Jurisdiction, and took it under submission. Having reviewed all pertinent papers on file and for the reasons set forth below, the Court hereby DENIES both Defendant's Motion for Reconsideration and its alternative Motion to Dismiss for Lack of Subject Matter Jurisdiction.

### II. BACKGROUND

Plaintiff Guthy–Renker Fitness, LLC ("Plaintiff") is purportedly manufacturing an elliptical exercise machine (the "POWER TRAIN") which simulates the exercises of walking, jogging, stair climbing and running. (Compl. ¶ 7.) Plaintiff allegedly has already received thousands of advance orders from retail outlets for the POWER TRAIN and soon plans to offer the exercise apparatus for sale through the use of television infomercials. (*Id.* ¶ 8.)

Defendant Precor Incorporated ("Precor") also manufactures and sells an elliptical training device (the "EFX"). (Order dated March 16, 1998 at 2.) Precor is the apparent holder of U.S. Patent Nos. 5,242,343; 5,383,-829 (the " '829 Patent"); 5,518,473; 5,562,574; and 5,577,985 (collectively referred to as "Patents"). According to Precor, the EFX specifically incorporates certain technology covered by the '829 Patent, which was originally issued to a Mr. Larry Miller ("Miller"). (*Id.*) Precor obtained the rights to Miller's '829 Patent through an exclusive license agreement. (*Id.*) Precor subsequently granted Defendant ICON Health and Fitness, Inc.

level of its connections favor transfer.

("ICON" and collectively referred to as "Defendants") a license to manufacture and sell the EFX. (*Id.*)

On October 2, 1997, Precor's legal counsel sent a letter to Plaintiff notifying it of the Patents and encouraging further dialog between the parties to avoid the sale of potentially infringing devices. (*Id.*) On October 20, 1997, Plaintiff initiated the instant case by filing a Complaint against Defendants seeking a declaratory judgment that the POWER TRAIN does not infringe Defendants Patents, or in the alternative an order declaring the Patents invalid. (Compl. at 6.) The Complaint also asserts a cause of action against Defendants for Tortious Interference with Prospective Economic Advantage. (Compl. at 4–5.) Plaintiff filed a First Amended Complaint on November 21, 1997.

On January 15, 1998, Plaintiff perfected substitute service on Precor.[1] On January 16, 1998, Precor filed a Complaint for infringement of the '829 Patent against Plaintiff and Luxqueen Sporting Goods Manufacturing, Co.[2] ("Luxqueen") in the Western District of Washington (the "Washington Action"). (Order at 3.) Defendants subsequently served Plaintiff on January 19, 1998. (*Id.*)

On February 4, 1998, Plaintiff and Precor agreed to a stipulation granting Precor additional time to answer the First Amended Complaint. On February 13, 1998, Precor filed a Motion to Transfer or, Alternatively to Dismiss or Stay the Proceedings. Precor then answered the First Amended Complaint on February 20, 1998. Plaintiff opposed the Motion on February 23, 1998. Precor subsequently replied on March 2, 1998. On March 16, 1998, the Court denied Precor's Motion.

On March 26, 1998, Precor filed the instant Motion for Reconsideration Regarding Transfer, or in the Alternative, to Dismiss for Lack of Subject Matter Jurisdiction. Plaintiff filed its Opposition on April 6, 1998. Precor subsequently replied on March 26, 1998.

A hearing on Precor's Motion for Reconsideration Regarding Transfer, or in the Al-

ternative, to Dismiss for Lack of Subject Matter Jurisdiction was taken off calendar by Minute Order dated April 14, 1998.

## III. ANALYSIS

### A. *Legal Standard for Motions for Reconsideration*

Under Central District of California Local Rule ("Local Rule") 7.16, a motion for reconsideration is only proper in the following circumstances: (1) if there is a material difference in fact or law from that presented to the Court before such decision that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time of such decision; or (2) if new material facts emerge or a change of law occurs after the time of such decision; or (3) if there is a manifest showing of a failure to consider material facts presented to the Court before such a decision. A motion for reconsideration shall not in any manner repeat any arguments that were presented in the original motion or opposition. Local Rule 7.16.

### B. *Application of Standard to Precor's Motion for Reconsideration*

In its Order denying Precor's Motion to Transfer, Dismiss or Stay the Proceedings (the "Order"), the Court ruled that Plaintiff's action met the requisite elements of the first-to-file rule and that Plaintiff did not engage in forum shopping or anticipatory litigation by filing its declaratory action, thereby justifying a departure from the rule. (Order at 18.) The Court further concluded that there was insufficient evidence to set aside Plaintiff's choice of forum based on the applicable convenience factors. (*Id.*) The Court is now asked to reconsider its ruling denying Precor's Motion to Transfer, Dismiss or Stay.

### 1. Precor has Failed to Establish that Reconsideration is Procedurally Appropriate

In support of its Motion for Reconsideration, Precor states that on March 12, 1998,

---

**1.** As of April 10, 1998, there is no recorded proof of service on ICON.

**2.** Luxqueen Sporting Goods, LLC allegedly manufactures certain products in Taiwan and ships them to Plaintiff for sale in the United States.

Precor learned of advertisements featuring the POWER TRAIN in both the Seattle Times and Seattle Post–Intelligencer. (Mot. at 2.) According to Precor, the newly discovered evidence "confirms the existence of key witnesses in Washington, and further supports the balance of convenience factors weighing in favor of transfer to and consolidation with the Washington actions."[3] (*Id.* at 3.) Precor additionally asserts that the Court's previous Order was based on the incorrect factual assumption that five patents are at issue in the present action, rather than the one patent at issue in the Washington Actions. (*Id.*) Accordingly, Precor contends that transfer is appropriate in the interest of judicial efficiency. (*Id.*)

█ Precor's Motion is an attempt to reopen argument on issues already decided by this Court, after Precor had additional time to conduct research. A motion for reconsideration cannot be based on evidence that could reasonably have been discovered prior to the court's ruling. *See Hopkins v. Andaya*, 958 F.2d 881, 887 n. 5 (9th Cir.1992).

█ Here, on March 13, 1998, Precor's attorney contacted the stores advertising the POWER TRAIN and it was discovered that these stores had been offering the allegedly infringing device for sale for three weeks to five months depending on the store's location. (Lowe Decl. ¶¶ 4, 5.) The discovery of this purportedly new evidence is predicated on the fact that Precor learned of the advertisements featuring the allegedly infringing device on March 12, 1998. (*Id.* ¶ 2.) However, Precor offers no evidence that viewing the March 12, 1998 advertisements was the only reasonable means of gathering the proffered evidence or that the publication date was the first date that the advertisement ran in either of the two publications.[4] Rather, Precor's evidence merely states that Precor learned of the advertisements on March 12, 1998. (*Id.* ¶ 2.) More importantly, by Precor's own admission, the stores advertising

the POWER TRAIN had been selling the device for anywhere from three weeks to five months prior to March 13, 1998. (*Id.* ¶ 4.) Accordingly, Precor could have reasonably discovered these facts by merely picking up the phone and calling at least one of the sporting goods stores before filing its Motion to Transfer, Dismiss or Stay on February 4, 1998.

Precor additionally attempts to reargue that both the present action and the Washington actions exclusively concern infringement of only the '829 Patent. In its Order, the Court recognized that transfer of the present action would not necessarily result in judicial efficiency since the present action "necessitates the interpretation of four additional patents apparently not at issue in the Washington actions." (Order at 15.) However, Precor asserts that because it has chosen to file a patent infringement claim solely on the '829 Patent, the '829 Patent is the only patent at issue in this litigation. (*Id.*) However, merely because Precor chose to sue only Plaintiff over the '829 Patent, does not mean that Plaintiff is precluded from seeking a declaratory judgment regarding the other four patents. In its October 2, 1997 letter, Precor asserted its patent rights under all four patents; accordingly since Plaintiff's Complaint includes all five patents, the case involves all five patents, not just the '829 Patent.

Based on foregoing, the Court DENIES the Motion for Reconsideration, as Precor has failed to present evidence that it could not otherwise have reasonably discovered prior to the Court's Order. Furthermore, Precor has failed to illustrate the existence of an incorrect factual assumption by the Court in reaching its earlier decision. Nevertheless, assuming *arguendo* that the Court did reconsider its Order based on Precor's additional material, the result would not be different.

---

**3.** Precor additionally contends that the existence of its allegedly newly discovered evidence supports a finding that personal jurisdiction over Plaintiff is proper in Washington. (Mot. at 2–3.) However, since the Court denies Precor's Motion to Reconsider, it need not address the issue of

whether personal jurisdiction exists over Plaintiff in Washington.

**4.** However, Precor's attorney did contact both publications in order to discern their average weekday distribution. (Lowe Decl. ¶ 3.)

2. Precor has Failed to Establish that Its Evidence Requires a Different Result on its Motion to Transfer, Dismiss or Stay

Precor bases its argument for reconsideration on the premise that the Court would have decided Precor's Motion to Transfer, Stay or Dismiss differently if presented with additional evidence that Plaintiff was specifically marketing its potentially infringing device to Washington residents. (Mot. at 3.) According to Precor, this evidence shifts the balance of convenience factors in favor of transferring the action to Washington. (*Id.*) Moreover, Precor asserts that the Court based its decision on the improper factual assumption that there are five patents involved in Plaintiff's declaratory action, when in fact the '829 Patent is the only patent truly at issue in Plaintiff's action. (*Id.*) Accordingly, Precor contends that the Court was incorrect in concluding that judicial efficiency would not be served in transferring the action to Washington. (*Id.*)

Precor's arguments, if considered as true, would not alter the Court's earlier decision to decline transfer for two reasons. First, Precor's newly discovered evidence would not significantly impact the Court's earlier convenience analysis. As stated in the Court's Order, the first-to-file rule may be relaxed if the balance of convenience weighs in favor of the later-filed action. (Order at 13.) In making this determination, the Court carefully considered the following factors: (1) the location of the witnesses and evidence; (2) the degree of calendar congestion in the Central District of California; and (3) Precor's lack of substantial connection with the present forum. (*Id.*) Precor's purportedly new evidence that Plaintiff is actively marketing the potentially infringing device in Washington may impact only a portion of the first factor considered by the Court, that is the location of the witnesses and evidence. However, as the Court concluded in its Order, the remaining convenience factors still support denying Precor's Motion to Dismiss, Transfer or Stay.[5]

Second, Precor's new evidence does not substantially alter the Court's earlier convenience analysis concerning the location of the witnesses and evidence. In its Order, the Court concluded that both parties had equally compelling reasons for having the action heard in their respective forums. (*Id.* at 15.) This conclusion is also warranted in light of Precor's purportedly new evidence because even though this new evidence potentially increases the number of potential Washington witnesses, the new evidence does not mitigate Plaintiff's assertions that all of its witnesses and documentary evidence are located in the present forum. Moreover, in reaching its earlier decision the Court considered the possible impact on this convenience factor if both the present action and Washington actions solely involved the '829 Patent. (*Id.*) On this point, the Court expressly stated that "even if the present action solely involved the '829 Patent, transfer would not necessarily result in substantial judicial efficiency because there are multiple alleged infringing devices, each of which possibly involve separate application to the construed patent." (*Id.*) Consequently, even if the Court were to assume Precor's assertion that both the present action and Washington actions solely involve the '829 Patent, it would not necessarily alter the Court's earlier conclusion on this convenience factor. Moreover, as indicated above, the Court finds that this case does not only involve the '829 Patent, but rather all five patents.

In sum, the evidence presented by Precor does not alter the outcome of the Court's earlier analysis in denying Precor's Motion to Dismiss, Transfer or Stay, and there is no compelling reason for the Court to reconsider its Order. Plaintiff filed this action before Precor filed its Washington action, and Plaintiff is entitled to have its choice of forum respected. Therefore, the Court DENIES Precor's Motion for Reconsideration.

C. *Precor's Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Precor alternatively moves for a dismissal of Plaintiff's declaratory action for lack of

---

**5.** For example, the Court concluded that neither calendar congestion nor Precor's lack of substantial connection with the present forum necessitated transfer of the action to Washington. (Order at 16, 17.)

subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Mot. at 3.) According to Precor, Plaintiff could not have properly commenced its declaratory relief action under 28 U.S.C. § 2201 because Precor's intent to sue letter was insufficient to place Plaintiff in reasonable apprehension of suit. (*Id.* at 5.) As support for its proposition, Precor cites a portion of the Court's Order denying transfer which states that "Precor's letter neither provided nor intended to provide Plaintiff with a specific, concrete indication of imminent suit within the meaning of *Amerada* and *Ward.*" (*Id.*)

### 1. Legal Standards for Subject Matter Jurisdiction in Declaratory Relief Actions

 In order for the court to have proper subject matter jurisdiction in a declaratory relief action, the plaintiff must show that an "actual controversy" exists between himself and the defendant. 28 U.S.C. § 2201(a). To satisfy § 2201's "actual controversy" requirement in the patent context, there must be: (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension of a patent infringement suit on the part of the declaratory plaintiff, and (2) present activity which would could constitute infringement or concrete steps taken with intent to conduct such activity. *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1052 (Fed.Cir.1995). A declaratory judgment plaintiff may form a reasonable apprehension of suit from either the patentee sending a letter expressly indicating a claim of patent infringement or if a claim of patent infringement is evident based upon the totality of circumstances. *See Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 888–89 (Fed.Cir.1992).

### 2. Plaintiff had a Reasonable Apprehension of Suit by Precor Prior to Initiating its Declaratory Judgment Action

 Precor contends that Plaintiff did not have a reasonable apprehension of suit prior to initiating its declaratory action based on its mailing of an October 2, 1997 letter to Plaintiff.[6] (Mot. at 5.) In opposition, Plaintiff contends that it had a reasonable apprehension of suit based upon Precor's October 2, 1997 letter, as well as a September 22, 1997 letter mailed to its previous supplier.[7] (Opp'n at 10–11.)

The Court first considers whether Precor's letters expressly indicated that Plaintiff had infringed its patents. *See Shell Oil Co.*, 970 F.2d at 888. If such an express intent is apparent from the letters, then Plaintiff possessed a reasonable apprehension of suit for purposes of § 2201. *See id.* Precor's letters, however, do not expressly state that Plaintiff had infringed its patents.[8] As such, Plaintiff could not have had a reasonable apprehension of suit for commencing its declaratory action based on an express statement that Precor considered Plaintiff to be infringing its patents.

The Court next considers whether the ·totality of the circumstances supports a conclusion that Plaintiff had a reasonable apprehension of suit based on Precor's correspondence. *See id.* In examining the totality of the circumstances, the Court first recognizes that the content of Precor's letters would lead a reasonable person to conclude that Precor was making a veiled threat of suit against Plaintiff. First, the letters clearly indicate that Precor is the patent holder of five specific patents which are potentially infringed by Plaintiff's device. (Compl.Ex. A.) Precor also indicates that it has not licensed Plaintiff the right to use or manufacture cross training exer-

---

**6.** Precor does not contend that Plaintiff's manufacturing and marketing the POWER TRAIN could not have constituted infringing activity. In fact, Precor's correspondence sent to Plaintiff indicates that it believed Plaintiff was manufacturing and marketing a potentially infringing device. (Compl.Ex. A, B.)

**7.** Both letters are properly before this Court for consideration because they were both attached to and incorporated by reference in Plaintiff's Com-

plaint. *See Kaufman & Broad–South Bay v. Unisys Corp.*, 822 F.Supp. 1468, 1477 (N.D.Cal. 1993).

**8.** However, Plaintiff's letters come very close to meeting this requirement. The letters specifically assert Precor's ownership of specific patents and their belief that Plaintiff was "considering marketing" potentially infringing devices. (Compl.Ex. A.)

cise machines covered by its patents. (Id.) Precor additionally emphasized that it "aggressively enforces it patents against infringement." (Id.) Moreover, Precor further detailed its past enforcement activities, including proceedings before the United States International Trade Commission and employing the assistance of the United States Trade Representative and the Taiwan Ministry of Economic Affairs. (Id.) The latter portion of Precor's correspondence is particularly indicative of the reasonableness of Plaintiff's apprehension of suit since it is specifically directed toward enforcement proceedings in Taiwan, the location of Plaintiff's alleged manufacturer of the potentially infringing device.

Second, the party sending the letters and to whom they were mailed further support a finding that the totality of the circumstances indicates that Plaintiff had a reasonable apprehension of suit at the time it commenced the declaratory action. First, the correspondence at issue was sent by Precor's legal counsel, Christensen O'Conner Johnson & Kindness, L.L.C., on its stationary which clearly indicates that the law firm specializes in "patent, trademark and other intellectual property matters." (Compl.Ex. A, B.) Furthermore, Precor's legal counsel additionally sent correspondence to the purported manufacturer of Plaintiff's device. (Compl.Ex. B.) While these factors alone do not result in a reasonable apprehension of suit, accompanied by the content of letters as discussed above, these letters do support the conclusion that Plaintiff had a reasonable apprehension of suit based on the totality of the circumstances presented.

Precor asserts, relying on *Drew Chemical Co. v. Hercules Inc.*, 407 F.2d 360, 362 (2d Cir.1969), that its letters are merely banter between the parties amounting to a business argument rather than a threat to file suit. (Mot. at 4.) Moreover, Precor contends that under *Phillips Plastics,* correspondence alone between the patentee and declaratory plaintiff is insufficient to create a reasonable apprehension of suit in the declaratory plaintiff. (Id.) However, both *Drew Chemical Co.*

and *Phillips Plastics* are distinguishable from the present case.

In *Drew Chemical Co.*, the court found that the patentee's oral hints of infringement were insufficient to create a reasonable apprehension of suit in the declaratory plaintiff. *Drew Chemical Co.*, 407 F.2d at 362. There, the court recognized that the communications between the two parties were made during the course of license negotiations. *Id.* From these facts, the court characterized the patentee's comments as mere banter between parties. *Id.* In the present case, Precor's correspondence was not communicated during the course of any negotiations between Precor and Plaintiff. Rather, the correspondence was sent as a literary warning shot across Plaintiff's bow as means to stop Plaintiff from marketing its device. Moreover, Precor's letter contained far more detail than the cursory statements made by the patentee in *Drew Chemical Co.* Accordingly, *Drew Chemical Co.* is not controlling in the present case.

Likewise, the Court also finds Precor's reliance on *Phillips Plastics* to be unpersuasive. There, the patentee sent certain letters to the declaratory judgment plaintiff indicating that it owned the rights to certain patents and offering to open license negotiations with the declaratory plaintiff. *Phillips Plastics Corp.*, 57 F.3d at 1052. In response to the letters, the declaratory plaintiff commenced brief license negotiations with the patentee. *Id.* The declaratory plaintiff then filed its declaratory relief action without a clear termination of the license negotiations. *Id.* Based on this factual scenario, the court held that the declaratory plaintiff did not have a reasonable expectation of suit based on the correspondence between the parties absent a termination of the license negotiations. *Id.* at 1055–54. Here, Precor's actions are readily distinguishable from the parties in *Phillips Plastics* because the parties never engaged in any form of negotiations. Therefore, *Phillips Plastics* does not control the present action.

Finally, Precor additionally contends that the Court's Order regarding anticipatory filing has already concluded that Precor's correspondence could not have created a reason-

able apprehension of suit on the part of Plaintiff. (Mot. at 5.) However, Precor misconstrues the language of the Court's Order to support its position. As the Court recognized, Precor's letter could not have created a reasonable apprehension of *imminent* suit in Plaintiff within the meaning of the decisions in *Amerada* and *Ward.* However, the standards for determining whether a declaratory plaintiff possessed a reasonable apprehension of suit under § 2201 are not coextensive with the inquiry set forth in *Amerada* and *Ward* for determining whether a case was anticipatorily filed.

Both *Amerada* and *Ward* involved the determination of whether the declaratory plaintiff's action was commenced as a bad faith, anticipatory filing for purposes of disregarding the first-to-file rule. *See Ward v. Follett Corp.,* 158 F.R.D. 645, 648 (N.D.Cal. 1994); *Amerada Petroleum Corp. v. Marshall,* 381 F.2d 661, 663 (5th Cir.1967). As recognized by the court in *Ward,* in order for a declaratory action to be filed in anticipation of litigation, there must be "specific, concrete indications that suit by the defendant was *imminent.*" *Ward,* 158 F.R.D. at 648 (emphasis added). In *Amerada,* the court concluded that such an imminent indication of suit was present where a defendant threatened to sue a declaratory plaintiff if the declaratory plaintiff did not appear as a defendant in an existing lawsuit. *Amerada,* 381 F.2d at 662–63. Accordingly, for purposes of setting aside the first-to-file rule, the defendant party must show that the declaratory plaintiff's action was filed as a forum shopping device in anticipation of imminent suit by the defendant.

 In contrast, § 2201 does not require the declaratory plaintiff's action to have been commenced in imminent apprehension of suit. Rather, as discussed above, § 2201 merely requires that the declaratory plaintiff commence the action in response to a reasonable apprehension of suit. *See Phillips Plastics Corp.,* 57 F.3d at 1052; *Shell Oil Co.,* 970 F.2d at 887–88. In a patent infringement

action, the declaratory plaintiff's reasonable apprehension of suit may be satisfied by either an express claim of infringement by the patentee or when the totality of the circumstances makes such a conclusion by the declaratory plaintiff reasonable. *Shell Oil Co.,* 970 F.2d at 888. Thus, a declaratory plaintiff in a patent infringement action may properly initiate suit where the totality of circumstances reveals a reasonable belief that defendant will commence an infringement suit against it, but these factors may well fall short of the imminent suit requirements set forth in *Amerada* and *Ward.* Moreover, as recognized by Plaintiff in its Opposition, adopting Precor's interpretation of § 2201 would emasculate the first-to-file rule in declaratory relief actions in patent cases where the declaratory plaintiff files suit in an attempt to quash threats by the patentee.[9] Therefore, contrary to Precor's assertion, the Court's Order stating that Precor's correspondence did not create a reasonable apprehension of imminent suit in Plaintiff for purposes of warranting a departure from the first-to-file rule does not warrant a similar conclusion under a § 2201 analysis since the two inquiries are not the same.

In sum, subject matter jurisdiction is proper under *Shell Oil* because the totality of the circumstances presented reveal that Plaintiff had a reasonable apprehension of suit by Precor at the time it filed the present action. Therefore, Precor's Motion to Dismiss for Lack of Subject Matter Jurisdiction is DENIED.

## IV. CONCLUSION

Based on the foregoing, the Court DENIES Precor's Motion to Reconsider, or in the Alternative to Dismiss for Lack of Subject Matter Jurisdiction.

**IT IS SO ORDERED.**

9. For example, if the Court were to interpret the anticipatory filing requirements set forth in *Amerada* and *Ward* as being coextensive with § 2201's reasonable apprehension of suit requirement, anytime a patentee sends a letter threatening a party with a patent infringement action any responsive filing of a declaratory relief action by the party would either be a bad faith anticipatory filing or not be in reasonable apprehension of suit for purposes of § 2201.