Opinion concurring in the result filed by Circuit Judge BRYSON.
BRYSON, Circuit Judge,
concurring in the result.
Under our law, as things stood before the Supreme Court’s decision in Medlm-mune, the district court’s order in this case was correct. ST, the patentee, had offered a license to SanDisk, but had not threatened suit and had sought to continue licensing negotiations. Although ST had made a detailed showing as to why it believed SanDisk’s products were within the scope of its patent rights, there is nothing exceptional in that. In the typical case, we would expect competent patent counsel who offers a license to another party to be prepared to demonstrate why *1384 such a license is required. By the time the suit was brought, ST had done nothing to give SanDisk cause to be in reasonable apprehension of suit, and in fact ST had expressly stated that it did not intend to sue SanDisk. In short, ST was simply availing itself of the safe haven our cases had created for patentees to offer licenses without opening themselves up to expensive litigation. See, e.g., Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha, 57 F.3d 1051, 1054 (Fed.Cir.1995); Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 888 (Fed.Cir.1992).
The decision in Medlmmune dealt with a narrow issue: whether a declaratory judgment action can be brought by a patent licensee without terminating the licensing agreement. Footnote 11 of the Med-lmmune opinion, however, went further and criticized this court’s “reasonable apprehension of suit” test for declaratory judgment jurisdiction. I agree with the court that the footnote calls our case law into question and would appear to make declaratory judgments more readily available to parties who are approached by patentees seeking to license their patents. In particular, the reasoning of the Medlm-mune footnote seems to require us to hold that the district court in this case had jurisdiction to entertain SanDisk’s declaratory judgment action. For that reason I concur in the judgment of the court in this case reversing the jurisdictional dismissal of the complaint.
I think it is important, however, to point out the implications of the footnote in Medlmmune as applied here, because the implications are broader than one might suppose from reading the court’s opinion in this case. While noting that it is not necessary to define the outer boundaries of declaratory judgment jurisdiction, the court holds that “where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license,” the party may bring a declaratory judgment action. Applying that principle, the court concludes that in this case, where “ST sought a right to a royalty under its patents based on specific, identified activity by SanDisk,” an Article III case or controversy has arisen.
In practical application, the new test will not be confined to cases with facts similar to this one. If a patentee offers a license for a fee, the offer typically will be accompanied by a suggestion that the other party’s conduct is within the scope of the patentee’s patent rights, or it will be apparent that the patentee believes that to be the case. Offers to license a patent are not requests for gratuitous contributions to the patentee; the rationale underlying a license offer is the patentee’s express or implied suggestion that the other party’s current or planned conduct falls within the scope of the patent. Therefore, it would appear that under the court’s standard virtually any invitation to take a paid license relating to the prospective licensee’s activities would give rise to an Article III case or controversy if the prospective licensee elects to assert that its conduct does not fall within the scope of the patent. Indeed, as the court makes clear, even a representation by the patentee that it does not propose to file suit against the prospective licensee will not suffice to avoid the risk that the patentee will face a declaratory judgment action. And if there is any uncertainty on that score, all the prospective licensee has to do in order to dispel any doubt is to inquire of the paten-tee whether the patentee believes its activities are within the scope of the patent. If the patentee says “no,” it will have made a damaging admission that will make it very hard ever to litigate the issue, and thus *1385 will effectively end its licensing efforts. If it says “yes” or equivocates, it will have satisfied the court’s test and will have set itself up for a declaratory judgment lawsuit.
For these reasons, I see nothing about the particular facts surrounding this licensing negotiation in this case that triggers SanDisk’s right to bring a declaratory judgment action under the new standard. The court emphasizes that ST made a “detañed presentation [to SanDisk] which identified, on an element-by-element basis, the manner in which ST believed each of SanDisk’s products infringed the specific claims of each of ST’s patents.” The court summarizes ST’s presentation by stating that “ST communicated to SanDisk that it had made a studied and determined infringement determination and asserted a right to a royalty based on this determination” and that SanDisk “maintained that it could proceed in its conduct without the payment of royalties to ST.” Those facts, the court concludes, evinced a sufficient controversy to entitle SanDisk to institute its declaratory judgment suit.
But what is the significance of those facts? The court’s legal test does not suggest that the case would come out differently if ST had been less forthcoming about why it believed SanDisk should take a license, or even if ST had simply contacted SanDisk, provided copies of its patents, and suggested that SanDisk consider taking a license. I doubt the court would hold that there was no controversy in that setting, as long as SanDisk was prepared to assert that it believed its products were not within the scope of ST’s valid patent rights. If SanDisk’s lawyers had any question about whether this court would permit them to seek a declaratory judgment under those circumstances, they could readily resolve that question by sending a “put up or shut up” response to ST’s licensing offer — asking ST to state expressly whether it regarded SanDisk’s products to be within the scope of ST’s patents and to identify with particularity how SanDisk’s products read on particular claims of those patents. Any response by ST would either end its licensing efforts or expose it to a declaratory judgment action.[1]
In sum, the rule adopted by the court in this case will effect a sweeping change in our law regarding declaratory judgment jurisdiction. Despite the references in the court’s opinion to the particular facts of this case, I see no practical stopping point short of allowing declaratory judgment actions in virtually any case in which the recipient of an invitation to take a patent license elects to dispute the need for a license and then to sue the patentee. Although I have reservations about the wisdom of embarking on such a course, I agree with the court that a fair reading of footnote 11 of the Supreme Court’s opinion in Medlmmune compels that result, and I therefore concur in the judgment reversing the district court’s dismissal order in this case.[2]

. The court suggests that ST could have avoided the risk of a declaratory judgment action by obtaining a suitable confidentiality agreement. The problem with that suggestion is that it would normally work only when it was not needed — only a party that was not interested in bringing a declaratory judgment action would enter into such an agreement. A party that contemplates bringing a declaratory judgment action or at least keeping that option open would have no incentive to enter into such an agreement.

. Although I agree that the judgment must be reversed, I take issue with the scope of the *1386 remand insofar as it applies to the district court's exercise of its discretion to decline to entertain this action as a discretionary matter. I would allow the district court to reconsider that issue based on all the circumstances, not just "additional facts” not previously before the district court, as the terms of this court’s remand seem to require. Thus, for example, the fact that the parties are engaged in a parallel infringement action in another district court is an important factor in the district court’s decision on whether to allow SanDisk's declaratory suit to proceed at this time. See Intermedics Infusaid, Inc. v. Regents of Univ. of Minn., 804 F.2d 129 (Fed. Cir.1986) (pending action in another jurisdiction is sufficient ground on which to stay declaratory suit). The district court should be free on remand to consider that factor in determining how to exercise its discretion, even though the pendency of that parallel action is not an "additional fact” that was not before the court at the time of its earlier decision.